UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW ROUSH,

    Petitioner,

v.                                                           CASE NO. 02-CV-73281-DT
                                                              HONORABLE AVERN COHN

SHERRY BURT,

    Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

This is a habeas corpus case under 28 U.S.C. § 2254. Petitioner Andrew Roush attacks his state court conviction for first-degree criminal sexual conduct. As will be explained, the only claim before the Court is whether Petitioner was deprived of the effective assistance of counsel. Having reviewed the state court record and the parties' pleadings and supplemental briefs, and having held an evidentiary hearing and oral arguments, the Court concludes that Petitioner did not receive inadequate counsel. Accordingly, the petition will be denied. The reasons follow.

### I. Background

### A. The State Court Proceedings

In 1996 Petitioner was charged in Calhoun County, Michigan with two counts of first-degree criminal sexual conduct. The charges arose from allegations that Petitioner penetrated his seven-year old stepdaughter's anus in 1993 while the family lived in Albion, Michigan. The child did not disclose the alleged abuse until 1996 when she was ten years old. She was eleven years old by the time she testified at trial in 1997.

The other prosecution witnesses were the complainant's mother and Dr. Stephen Guertin, who testified that he examined the complainant about three years after the alleged crime and observed a small scar running from the inside to the outside of her anal canal. Dr. Guertin concluded from his physical examination and the complainant's oral history that she had been sexually abused.

The defense theory was that the complainant's grandfather assaulted the complainant and that the complainant was confused or had been prompted by her grandmother and by her mother to falsely accuse Petitioner. Defense counsel presented one witness, who testified that Petitioner had babysat for her child on one occasion and that she had no complaints about him.

On January 23, 1997, the jury convicted Petitioner of one count of first-degree criminal sexual conduct. See MICH. COMP. LAWS §750.520b(1)(a) (sexual penetration with a person under the age of thirteen). The jury was unable to reach a decision on the other count of first-degree criminal sexual conduct. The trial court subsequently sentenced Petitioner to life imprisonment.

In an appeal of right, Petitioner argued that: (1) the trial court violated the Michigan Rules of Evidence and deprived him of a fair trial by permitting Dr. Guertin to give hearsay testimony; (2) it was reversible error for Dr. Guertin to vouch for the complainant and for the prosecutor to rely on that testimony during closing arguments; and (3) defense counsel was ineffective for failing to object adequately to Dr. Guertin's hearsay testimony and vouching. The Michigan Court of Appeals found no merit in these claims and affirmed Petitioner's conviction in an unpublished *per curiam* opinion. See People v. Roush, No. 202850 (Mich. Ct. App. Dec. 1, 1998). Petitioner raised the

same three claims in the Michigan Supreme Court, which denied leave to appeal on September 28, 1999. See People v. Roush, 603 N.W.2d 265 (1999) (table).[1]

On October 3, 2000, Petitioner filed a pro se motion for relief from judgment in which he argued that (1) the trial court admitted improper hearsay testimony by Dr. Guertin, (2) the trial court abused its discretion by allowing the prosecutor to recall the complainant over defense counsel's objection, and (3) his trial attorney was ineffective. The trial court denied Petitioner's motion after determining that (1) Petitioner's first claim regarding the pediatrician's testimony was raised and decided against Petitioner on appeal, (2) Petitioner's second claim lacked merit, and (3) the assertions about defense counsel did not reflect deficient performance or prejudice to Petitioner. See People v. Roush, No. 96-3122 FC (Calhoun County Cir. Ct. Nov. 17, 2000).

Petitioner alleged in a motion for reconsideration that the combination of defense counsel's errors deprived him of effective assistance of counsel and a fair trial. The trial court denied reconsideration on the ground that Petitioner had not demonstrated any palpable errors requiring a different result.

Petitioner argued in an appeal from the trial court's decision that: (1) his trial attorney was ineffective for (a) not interviewing known witnesses, (b) not discussing the case or any trial strategy with him, (c) not performing any investigation or obtaining any documents before trial, and (d) not permitting him to testify and not explaining the meaning of "impeach" so that he could make an informed decision to testify; (2) the combination of defense counsel's errors deprived him of effective assistance and the

---

[1] Justice Marilyn Kelly voted to grant leave to appeal.

right to a fair trial; (3) the trial court permitted improper hearsay evidence by a doctor; (4) the trial court abused its discretion by permitting the prosecutor to recall the complainant over defense counsel's objections; (5) the trial court lacked jurisdiction to try him; and (6) the trial court should have held an evidentiary hearing on his claims of ineffective assistance of trial counsel. The Michigan Court of Appeals denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." People v. Roush, No. 236736 (Mich. Ct. App. Dec. 10, 2001). On July 29, 2002, the Michigan Supreme Court denied leave to appeal for the same reason. See People v. Roush, 649 N.W.2d 80 (2002).

### B. The Federal Court Proceedings

Petitioner filed his habeas corpus petition pro se on August 12, 2002. The supporting brief alleged the following grounds for relief:

I. Petitioner is entitled to a writ of habeas corpus where the prosecution had the pediatrician examine the complainant three years after the alleged offenses in order to bolster its case[;] the circuit judge violated the rules of evidence and the court rulings in Meeboer and similar cases by overruling defense counsel's objection to the doctor's hearsay testimony.

II. Petitioner is entitled to a writ of habeas corpus where the crucial question at trial was whether [the complainant] was confused or lying about the alleged incidents[;] it was reversible error for the prosecution's doctor to testify as a human lie detector, vouching that he believed the complainant was telling the truth, and then for the prosecution to rely on that testimony in his closing argument.

III. Petitioner is entitled to a writ of habeas corpus where defense counsel was ineffective in failing to make an adequate objection concerning the doctor's hearsay testimony and his functioning as a human lie detector in saying that he believed that the complainant had been

sexually molested.

IV. Petitioner is entitled to a writ of habeas corpus where defense counsel was ineffective by not interviewing known witnesses for the Petitioner's trial.

V. Petitioner is entitled to a writ of habeas corpus where defense counsel was ineffective by not spending any time with the petitioner discussing the case or any strategy with the Petitioner.

VI. Petitioner is entitled to a writ of habeas corpus where defense counsel was ineffective by not performing any investigation or obtaining any documents prior to trial.

VII. Petitioner is entitled to a writ of habeas corpus where (1) defense counsel was ineffective by not having the Petitioner testify and (2) for not explaining what 'impeach' meant so the petitioner could make an informed decision to testify.

VIII. Petitioner is entitled to a writ of habeas corpus where if one of the errors of counsel's ineffectiveness alone didn't deprive Petitioner of a fair trial a combination of all these errors did deprive the petitioner of his right to the effective assistance of counsel and a right to a fair trial.

IX. Petitioner is entitled to a writ of habeas corpus where the trial court judge abused his discretion by allowing the prosecutor to recall his witness over defense counsel's objections.

X. Petitioner is entitled to a writ of habeas corpus where the trial court did not prove that it had jurisdiction to try the petitioner in their court.

XI. Petitioner is entitled to a writ of habeas corpus where the trial court did not have jurisdiction to try the petitioner in this case.

XII. Petitioner is entitled to a writ of habeas corpus where the trial court should have held an evidentiary hearing concerning all the issues of the ineffective assistance of trial counsel.

Following receipt of Respondent's answer, the Court appointed counsel for

Petitioner, who supplemented the habeas petition with a claim of ineffective assistance of appellate counsel (claim XIII). Petitioner asserted that his appellate counsel should have challenged trial counsel's representation.

In an opinion and order dated January 18, 2005, the Court dismissed claims I through III and IX through XII because the claims lacked merit. The Court determined that the claims about Petitioner's trial and appellate attorneys (IV through VIII and XIII) had arguable merit and required an evidentiary hearing.

On April 12, 2005, the Court conducted an evidentiary hearing on Petitioner's ineffective-assistance-of-counsel claims. Dr. Lawrence W. Schappa, who is a gynecologist and obstetrician, testified that, although he had never examined the complainant, he disagreed with Dr. Stephen Guertin's findings that a thin scar-like line on the complainant's anal canal was evidence of anal trauma. According to Dr. Schappa, lacerations due to anal trauma typically are thicker and more jagged and would cause the victim to complain of more severe trauma, such as bleeding. Dr. Schappa testified that the alleged scar on the complainant could have been the result of a defect in the musculature around the anal canal, fissures (cuts that repetitively break open, heal, and scar), constipation, an infection that causes persistent scratching, or a fold in the skin. Dr. Schappa conceded, however, that he would report a case to the authorities where the same physical evidence was present and the child gave a similar oral history.

The hearing was adjourned in part so that Petitioner's attorneys could depose Dr. Leandre Bautista, who supposedly advised Petitioner's trial attorney, Virginia Cairns, not to hire a defense expert because there was conclusive evidence of sexual abuse. The

attorneys deposed Dr. Bautista on May 25, 2005. Ms. Cairns was deposed on March 28, 2005, and again on November 10, 2005.

The Court's evidentiary hearing resumed on January 19, 2006, with Petitioner as the sole witness. He testified that Ms. Cairns did not discuss a trial strategy with him before trial and discouraged him from testifying. Petitioner also denied that he had suggested the defense strategy of blaming the child's grandfather for the sexual abuse. Respondent's attorney pointed out at the evidentiary hearing that Petitioner once asked Ms. Cairns whether a slight penetration amounted to criminal sexual conduct. Petitioner denied making the devastating admission.

Final arguments were held on May 18, 2006, and the parties recently filed supplemental briefs. The case is now ready for final disposition. As stated above, the only remaining issue in dispute is whether Petitioner's trial attorney was ineffective. This issue has been exhausted and is not procedurally defaulted. See Opinion and Order dated January 18, 2005 (Doc. #41).[2]

## II. Standard of Review

### A. Generally

Petitioner is entitled to the writ of habeas corpus only if he can show that the

---

[2] Although Respondent contends that the pending issues are procedurally defaulted and were not exhausted in state court, neither the exhaustion requirement, nor procedural default, are jurisdictional issues. White v. Mitchell, 431 F.3d 517, 526 (6th Cir. 2005) (explaining that the exhaustion requirement is not a jurisdictional one); Howard v. Bouchard, 405 F.3d 459, 476 (6th Cir. 2005) (explaining that procedural default is not a jurisdictional bar to review on the merits), cert. denied, __ U.S. __, __, 126 S. Ct. 1032 (2006). The Court therefore may proceed to address Petitioner's claims and deny the habeas petition on the merits despite the alleged deficiencies. 28 U.S.C. § 2254(b)(2); Hudson v. Jones, 351 F.3d 212, 216 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)), cert. denied, 543 U.S. 880 (2004).

state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Simply stated, Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." Price v. Vincent, 538 U.S. 634, 639 (2003). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, review is conducted in light of the law as it existed at the time of the final state court decision, Teague v. Lane, 489 U.S. 288 (1989), unless an intervening constitutional decision announces a 'watershed' rule of criminal law with implications for the fundamental fairness of the trial proceeding. Caspari v. Bohlen, 510 U.S. 383, 396 (1994).

Baze v. Parker, 371 F.3d 310, 318 (6th Cir. 2004), cert. denied, 544 U.S. 931 (2005).

### B. Ineffective Assistance-of-Counsel Claims

The Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. at 391 (quoting 28 U.S.C. § 2254(d)(1)). Therefore, to prevail on a claim of ineffective assistance, Petitioner must show that the state court's conclusion (that defense counsel was not ineffective) was an unreasonable application of Strickland. The Supreme Court explained in Strickland that the test for ineffective assistance has two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Id. at 687. "If the defendant makes an insufficient showing on either component of the ineffective assistance of counsel inquiry, it is not necessary to examine the remaining prong of the test." Barnes v. Elo, 339 F.3d 496, 502 (6th Cir. 2003) (citing Strickland, 466 U.S. at 697), cert. denied, 540 U.S. 1164 (2004).

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### III. Discussion

### A. Habeas Claim IV - Failure to Interview Known Witnesses

Petitioner alleges that his trial attorney, Virginia Cairns, made no attempt to interview potential witnesses that he mentioned to her. According to Petitioner, his girlfriend, Kristen Kilbourn, would have testified about the animosity between Petitioner and his wife Penny Roush. Kilbourn supposedly would have informed the jury that Penny Roush wanted to make life miserable for Petitioner and intended to put Petitioner in jail if he attempted to get custody of the couple's daughter, Staci.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."

10

Strickland, 466 U.S. at 691. "Where counsel fails to investigate and interview promising witnesses, and therefore 'ha[s] no reason to believe they would not be valuable in securing [defendant's] release,' counsel's inaction constitutes negligence, not trial strategy." Workman v. Tate, 957 F.2d 1339, 1345 (6th Cir. 1992) (quoting United States ex rel. Cosey v. Wolff, 727 F.2d 656, 658 n. 3 (7th Cir.1984)).

     Ms. Cairns presented one character witness at trial. At her deposition, Ms. Cairns denied Petitioner's allegation that she did not speak with his other witnesses. She asserted that some witnesses tried to evade service of subpoenas. She also claimed that neither Kristen Kilbourn, nor four other witnesses suggested by Petitioner, had any helpful or relevant information to offer. Petitioner's proposed alibi witness was his father, whom Ms. Cairns found unwilling or unable to testify in Petitioner's behalf. Petitioner wanted his former employers to testify that he worked for them, but the employers had no record of his employment because he had been a temporary employee.

     Petitioner complained to the Attorney Grievance Commission that Ms. Cairns should have used the complainant's mother and sister as witnesses. Ms. Cairns rejected this suggestion because she thought that those witnesses would have provided damaging testimony.

     The record does not support Petitioner's contention that his attorney made no attempt to interview proposed defense witnesses. Defense counsel either was unable to use the witnesses suggested to her or decided for strategic reasons not to use them. She was not ineffective for failing to present the witnesses suggested to her by Petitioner.

### B. Habeas Claim V - Failure to Discuss the Case with Petitioner

Petitioner alleges that he had only two brief meetings with Ms. Cairns before trial and that they did not discuss the case or a trial strategy. Defense attorneys have "a duty to consult with defendant[s] on important decisions, and to bring to bear on the case such skill and knowledge as to make the trial a reliable adversary proceeding." Jemison v. Foltz, 672 F. Supp. 1002, 1007 (E.D. Mich. 1987) (Gilmore, D.J.). Although the Constitution does not require defense attorneys to develop a meaningful relationship with their clients, Morris v. Slappy, 461 U.S. 1, 14 (1983), the right to counsel includes the right to consult with one's lawyer. See Geders v. United States, 425 U.S. 80, 88-89 (1976). However, "counsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." Lewis v. Alexander, 11 F.3d 1349, 1353-54 (6th Cir. 1993).

Ms. Cairns' case notes indicate that she saw Petitioner five times before trial. She stated at her depositions that the interviews probably lasted twenty to thirty minutes and perhaps as long as forty-five minutes. Although Petitioner alleges that records at the jail indicate that Ms. Cairns visited him only two times before trial, Ms. Cairns claimed at her depositions that she was well-known at the jail and sometimes did not sign in at the desk. She also claimed that Petitioner suggested the defense of blaming the complainant's grandfather for the sexual abuse. Ms. Cairns thought that this defense worked well because (1) the age of the complainant's anal scar could not be determined and (2) the complainant did not identify the person who penetrated her. She merely said that "a man" did it. In addition, Petitioner never denied that there was evidence of sexual abuse.

The record as a whole does not support Petitioner's contention that his attorney failed to discuss the trial and defense strategy with him. To the extent that Petitioner's testimony differs from Ms. Cairns' testimony, the Court finds Ms. Cairns to be more credible.

### C. Habeas Claim VI - Pretrial Preparation

#### 1. Failure to Investigate

Petitioner alleges next that Ms. Cairns did not perform an investigation to refute the criminal charges against him. He maintains that Ms. Cairns should have hired an expert medical witness to testify that any scar on the complainant's anus could have been caused by something other than sexual assault.

A defense attorney's "decision not to call a particular witness usually falls under the realm of trial strategy that [courts] are reluctant to disturb. At the same time, however, the decision not to call a witness must be grounded in some strategy that advances the client's interests." Eze v. Senkowski, 321 F.3d 110, 129 (2d Cir. 2003) (internal citation omitted).

> [W]hen a defendant is accused of sexually abusing a child and the evidence is such that the case will turn on accepting one party's word over the other's, the need for defense counsel to, at a minimum, consult with an expect to become educated about the 'vagaries of abuse indicia' is critical. The importance of consultation and pre-trial investigation is heightened where . . . the physical evidence is less than conclusive and open to interpretation.

Id. at 128.

The record indicates that Ms. Cairns did consult a medical expert. In an undated medical memo, Ms. Cairns stated that she spoke with Dr. Leandre Bautista, a

13

proctologist, regarding Dr. Stephen Guertin's physical examination of the complainant. Dr. Bautista allegedly informed Ms. Cairns that, in light the complainant's oral history that a man had molested her, he would have no trouble concluding that a scar on the child's anal canal was the result of blunt force trauma. Dr. Bautista allegedly discouraged Ms. Cairns from hiring a defense expert because, in his opinion, any reputable expert would reach the same conclusions as Dr. Guertin, and the victim would have be placed under a general anesthetic for a more thorough examination.

Dr. Bautista has stated in affidavits that he does not know Ms. Cairns and that he has never spoken to her regarding a criminal sexual conduct case. He denies participating in the conversations to which Ms. Cairns alluded in her undated medical memo. Ms. Cairns, however, has said that she knew Dr. Bautista professionally and socially and that she consulted him on other criminal sexual conduct cases. After her first deposition, she contacted Dr. Bautista by telephone in the hope that he would remember her. Although he claims in affidavits that he informed her over the telephone that he did not remember her, she claims that he did remember her and that he feared she wanted to sue him for giving bad advice.

Dr. Bautista's statements cannot be reconciled with Ms. Cairns' testimony. The Court finds Ms. Cairns to be more credible because she has provided written documentation demonstrating that she represented Dr. Bautista and his wife in a real estate transaction and that she bought Mrs. Bautista's horse. Dr. Bautista's professed failure to recall Ms. Cairns appears to be attributable to his fear of being sued and his reluctance to become involved in this case. He stated at his deposition that he signed his affidavits at the request of the Defender's Office, and he wished that he had never

signed them.

Petitioner argues that, even if the Court finds Ms. Cairns did consult Dr. Bautista, the consultation was inadequate. However, Petitioner did not dispute that the complainant had been sexually abused. Producing an expert defense witness to testify that the scar on the complainant's anal canal was caused by something other than sexual abuse would have been inconsistent with the defense theory that sexual abuse occurred, but Petitioner was not responsible for it. Cf. Eze, 321 F.3d at 130 (pointing out that a defense expert witness's testimony refuting the prosecution's medical expert, who concluded that sexual abuse occurred, would have been entirely consistent with the defense).

Ms. Cairns has said that she decided to use Dr. Stephen Guertin's testimony to support the defense theory that someone other than Petitioner sodomized the complainant. Ms. Cairns concluded that relying on Dr. Guertin's testimony was less risky than using her own expert because the anal scar on the complainant had an indefinite age. Ms. Cairns feared that, if a defense expert examined the complainant, he or she might have found incriminating evidence, and if the defense expert talked to the complainant, the complainant might have named Petitioner as the perpetrator. This is not a case in which defense counsel made no effort to contact a physician and where there was no medical evidence suggesting sexual abuse. Cf. Holsomback v. White, 133 F.3d 1382, 1388 (11th Cir. 1998) (concluding that defense counsel's decision not to contact the complainant's family physician or the physician who examined the complainant approximately twelve days after the last alleged incident of sodomy was not professionally reasonable).

Petitioner contends that a defense expert would have been required only to review the findings of the State's expert witness, Dr. Stephen Guertin. Dr. Lawrence Schappa reviewed Dr. Guertin's findings and stated at the evidentiary hearing that he disagreed with them. However, even Dr. Schappa conceded on cross-examination by Respondent's attorney that he would have reported a similar case to the authorities. The Court concludes for all the foregoing reasons, that defense counsel's decision not to use an expert witness at trial was reasonable trial strategy.

### 2.  Failure to Prepare a Witness

Petitioner asserts that Ms. Cairns did not prepare his character witness, Tina Neal, to testify. Ms. Cairns, however, claimed at her deposition that Ms. Neal knew what her testimony would be, was prepared to appear at trial on short notice, and testified as planned. Petitioner has failed to show that defense counsel's performance was deficient and prejudiced him.

### D.  Habeas Claim VII - Failure to Ask Petitioner to Testify

Petitioner alleges that Ms. Cairns discouraged him from testifying and did not explain the meaning of "impeach" so that he could make an informed decision about whether to testify. Petitioner claims that he would have admitted that his prior conviction, a nine-year-old felony for larceny from a building, was a stupid mistake, but that it was very different from the present charges. He also claims that he would have informed the jury that: (1) he intended to divorce the complainant's mother so that he could marry the mother of his other children; (2) he had informed Penny Roush that he was trying to get full custody of his and Penny's four-year-old child Staci because Penny was an unfit mother; (3) Staci was living with Petitioner and his girlfriend until Petitioner

16

was taken into custody; (4) Penny Roush gave custody of her other three children to her mother and sister because she was unable to care for them; and (5) Penny Roush had threatened to put him in jail to keep him from divorcing her and from getting custody of their daughter.

Defendants in criminal cases possess a constitutional right to testify in their own behalf. Rock v. Arkansas, 483 U.S. 44, 49 (1987). This right is personal to the defendant and may be relinquished only by the defendant. United States v. Joelson, 7 F.3d 174, 177 (6th Cir. 1993). Relinquishment of the right must be knowing and intentional. Id. Defense counsel's role is to advise the defendant whether to take the stand, but the ultimate decision is for the defendant to make. United States v. Hover, 293 F.3d 930, 933 (6th Cir. 2002).

> [W]hen a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. This is so because the defendant's attorney is presumed to follow the professional rules of conduct[3] and is 'strongly presumed to have rendered adequate assistance' in carrying out the general duty 'to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.'

United States v. Webber, 208 F.3d 545, 551 (6th Cir. 2000) (quoting Strickland, 466 U.S. at 688-90) (footnote in original).

Ms. Cairns made a note to herself about a month before trial that she had advised Petitioner of his right to testify. According to Ms. Cairns, Petitioner did not

---

[3] See e.g., ABA MODEL RULES OF PROFESSIONAL CONDUCT RULE 1.2(a) & cmt. (1995) ("In a criminal case, the lawyer shall abide by the client's decision . . . whether the client will testify."); ABA STANDARDS FOR CRIMINAL JUSTICE 4-5.2(a)(iv) (3d ed. 1993) ("whether to testify in his or her own behalf" is a decision "to be made by the accused after full consultation with counsel").

want to testify because he feared that the prosecutor would trick him and because the jurors would have an unfavorable impression of him due to the nature of the charges.

In a note written a few days before trial, Ms. Cairns stated that she had rehearsed a script with Petitioner in case he decided to testify. On the first day of trial, she informed the trial court that Petitioner might or might not testify. After Petitioner's character witness testified, Ms. Cairns asked for a brief adjournment in the proceedings and then announced that the defense had no further witnesses.

Ms. Cairns stated in a letter to the Attorney Grievance Commission that she and Petitioner discussed many times whether he should testify. She stated in one of her depositions that she did not think Petitioner would make a good witness.

The record indicates that Petitioner and Ms. Cairns decided jointly not to have Petitioner testify. There is no indication in the transcript of trial that Petitioner wanted to testify or that he disagreed with defense counsel about whether he should take the stand. Therefore, Petitioner's assent in the decision not to testify is presumed, as is the effectiveness of his attorney. Gonzales v. Elo, 233 F.3d 348, 357 (6th Cir. 2000).

### E. Habeas Claim VIII - Cumulative Effect of the Errors

The eighth and final habeas claim[4] alleges that, even if one of Ms. Cairns' errors did not prejudice Petitioner, the combination of her errors deprived him of effective assistance of counsel and a fair trial. The alleged errors, however, did not amount to ineffective assistance, and constitutional errors that would not individually support

---

[4] Although Petitioner alleged in an amended habeas petition that his appellate attorney, Paul E. Bennett, also was ineffective, this claim was never raised in state court, and Petitioner has not discussed it in his final brief. The Court therefore deems the issue abandoned.

habeas relief cannot be cumulated to support habeas relief. Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005).

### IV. Conclusion

This was a complex case. Petitioner's appointed counsel is commended for diligently pursuing Petitioner's ineffective assistance of counsel claim which resulted in a full vetting of the claim. Based on a careful review of the record, it cannot be said that Ms. Cairns was ineffective. Petitioner had a fair trial, and he was not entitled to perfect representation. Smith v. Mitchell, 348 F.3d 177, 206 (6th Cir. 2003), *cert. denied*, 543 U.S. 841 (2004). Furthermore, the Court's confidence in the outcome of the trial is not undermined by Ms. Cairns' representation of Petitioner. Therefore, the trial court's conclusion -- that Petitioner's allegations about defense counsel did not reflect deficient performance or prejudice to Petitioner -- did not result in a decision that was contrary to, or an unreasonable application of, Strickland. Petitioner is not entitled to habeas relief. Accordingly, the petition is DENIED.

**SO ORDERED.**

Dated: August 7, 2006    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 7, 2006, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5160